CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED in c'ville
MAY 25 2011
JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 3:08-cr-00042-1 |
| | ) | |
| v. | ) | § 2255 MEMORANDUM OPINION |
| | ) | |
| TONY LLOYD JOHNSTON | ) | By: Hon. Norman K. Moon |
| | ) | United States District Judge |

Tony Lloyd Johnston, a federal prisoner proceeding pro se, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Johnston challenges the validity of his confinement pursuant to this court's judgment sentencing him to 288 total months' incarceration for his illegal drugs and firearm convictions. Johnston alleges that his convictions were obtained in violation of due process and the right to effective representation. The United States filed a motion to dismiss, and Johnston responded, making the matter ripe for disposition. After reviewing the record, the court must grant the United States' motion to dismiss.

I.

Pursuant to a written plea agreement via Federal Rule of Criminal Procedure 11(c)(1)(C),[1] Johnston pleaded guilty on August 31, 2009, to possessing with the intent to distribute five grams or more of a mixture or substance containing cocaine base and cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) ("Count One"); being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) ("Count Two"); and using or carrying a firearm during and in relation to, or possessing such firearm in furtherance of, a drug trafficking crime in violation of 18 U.S.C. § 924(c) ("Count Three"). Johnston signed his initials on each page of the plea agreement, including the page containing the waivers to appeal

---

[1] Rule 11(c)(1)(C) allows the United States and a defendant to agree to a certain sentence or applicable sentencing provision that also binds a court once it accepts the defendant's guilty plea.

and to collaterally attack the conviction or sentence. By signing the plea agreement, Johnston affirmed that he had read the plea agreement, carefully reviewed every part of the agreement with his attorney, understood the agreement, and was voluntarily agreeing to its terms. Notably, Johnston also acknowledged that he was satisfied by his counsel's representation and did not have a complaint about him. Johnston further agreed to inform the court of any dissatisfaction or complaint he had with counsel by no later than sentencing.

During his plea hearing on November 30, 2009, Johnston stated under oath that he earned a GED and that he was not under the influence of any drug, medication, or alcoholic beverage. The court established that Johnston was aware of the nature of the charges against him, understood the range of punishment that he faced, understood how the United States Sentencing Guidelines might apply in his case, and knew that he had the right to a jury trial. Johnston agreed that he read and understood the agreement before he signed it. Johnston affirmed to the court that he agreed to the plea agreement provision waiving his right to file a petition for a writ of habeas corpus or attack the judgment in some other way at a later date. (Plea H'rg Tran. (no. 78) 14:21-24.) The court also specifically inquired whether Johnston was voluntarily pleading guilty. Johnston affirmed that he read and understood the plea agreement before he signed it and that no one had made any promises or induced him to plead guilty. Notably, Johnston affirmed that he was "fully satisfied with the counsel, representation[,] and advice given [to him] in this case by [his] attorney[.]" (Id. 17:11-17.)

At the start of the plea hearing, the court advised Johnston, "If you do not understand any of the questions or if at any time you wish to consult with your attorney, say so because it is essential that you understand each question before you answer." (Id. 3:24-25 – 4:1-3.) When

2

Johnston was unsure of either the court's questions or the appropriateness of his response, Johnston conferred with counsel before answering. (Id. 5, 10, 13.) On one such occasion, Johnston privately conferred with his counsel after counsel reiterated to the court that Johnston would be "knowingly waiving his right to appeal and to bring a collateral attack on the judgment and sentence and he agrees his attorney was effective." (Id. 9:23-25 – 10:1.) Counsel also reiterated later that Johnston "waives his right to any type of other post trial remedies . . . ." (Id. 13:20-22.)

After all of the court's questions, Johnston stated that he still wanted to plead guilty. The court ultimately accepted Johnston's guilty plea and found that he was "fully competent and capable of entering an informed plea; and that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense." (Plea H'rg Tran. 17:11-17.)

On December 2, 2009, the court sentenced Johnston to, inter alia, a total term of 228 months' incarceration: 168 months' incarceration for Counts One and Two, running concurrently, and 60 months' incarceration for Count Three, running consecutively. Johnston did not inform the court of any dissatisfaction with his attorney by the conclusion of his sentencing hearing, and he did not appeal his conviction or sentence.

Johnston timely filed the instant § 2255 motion, claiming that his counsel provided ineffective assistance, in violation of the Sixth Amendment of the United States Constitution. Johnston argues that counsel was ineffective for not explaining what the phrase "collateral attack" meant when used in the plea agreement or during the plea hearing. (Mot. to Vacate (no. 71) 2.) Counsel was also allegedly ineffective for not collaterally attacking in state court at least

one of the three prior convictions used to enhance his firearm sentence as an Armed Career Criminal. Johnston claims that he is entitled to be resentenced by a retroactive application of the Fair Sentencing Act of 2010. Lastly, Johnston claims that his sentence violates due process because he expects the United States Supreme Court to issue an opinion in an unrelated case favorable to his position that the § 924(c) mandatory minimum must not apply when § 924(e) imposes a greater mandatory minimum.

II.

As an initial matter, the United States argues that Johnston is not entitled to collaterally attack his conviction and sentence because his plea agreement is valid and contained a waiver of the right to collaterally attack his conviction and sentence. Johnston argues in opposition that he did not know what collateral attack meant when he agreed to that provision.

A "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). To bar Johnston from collaterally attacking his conviction, the waiver contained in his plea agreement must be both valid and sufficiently broad in scope to encompass this matter. See, e.g., United States v. Attar, 38 F.3d 727, 731-33 (4th Cir. 1994) (discussing the waiver of appellate rights). After reviewing the record, the court finds that the waiver is valid and sufficiently broad to bar Johnston's § 2255 motion.

A. Validity of the Waiver

A waiver is valid when "the record . . . show[s] that the waiver was based upon a knowing and intelligent decision." United States v. General, 278 F.3d 389, 400 (4th Cir. 2002) (internal quotation marks omitted). "[I]n the absence of extraordinary circumstances, the truth of

sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Lemaster, 403 F.3d at 221-22. If the court determines that a petitioner's allegations when viewed against the record of the Rule 11 plea hearing are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. Id. at 220 (internal quotations and citations omitted). Although the validity determination is often made based on the "adequacy of the plea colloquy --specifically, whether the district court questioned the defendant about the . . . waiver -- the issue ultimately is 'evaluated by reference to the totality of the circumstances.'" United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (quoting General, 278 F.3d at 400). "Thus, the determination 'must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" Id. (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)).

The facts in this case reveal that Johnston, who earned a GED, read and signed his plea agreement that provided he would forfeit his right to "file any document seeking to disturb, in any way, any order imposed" in this case. (Plea Ag't 6 (emphasis added).) Johnston acknowledged during his plea colloquy that he read and understood the plea agreement before he signed it. Johnston further acknowledged during his plea colloquy that he was voluntarily waiving his right to file a petition for a writ of habeas corpus or attack the judgment in some other way. When Johnston was unsure about a question or his response during the colloquy, he willingly consulted with counsel for advice.

Johnston's present argument that he did not know that "collateral attack" meant he would

5

waive a right to file a § 2255 motion is specious in light of his plea agreement and colloquy. The plea agreement provided in clear, certain terms that he was waiving a right to file any type of document, whether or not based on § 2255, to question the validity of his conviction, and Johnston testified that he understood these terms. Thus, the record establishes that Johnston knowingly and intelligently waived the right to file any pleading to question the validity of his conviction, and his arguments to the contrary are palpably incredible.

B.   Scope of the Waiver

The next question is whether Cowen's waiver bars this collateral attack. Furthermore, the United States Court of Appeals for the Fourth Circuit has distinguished a narrow class of claims that fall outside the scope of an enforceable waiver. These claims are issues that a defendant could not reasonably have foreseen when entering into a plea agreement, the imposition of a sentence above the statutory maximum, or the imposition of a sentence based on a constitutionally impermissible factor. See, e.g., Attar, 38 F.3d at 732; United States v. Craig, 985 F.2d 175, 178 (4th Cir. 1993); United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). Thus, the court must determine whether Johnston's claims fall within the waiver by agreement or outside the waiver by law.

1.   Ineffective assistance of counsel claims

Johnston argues that counsel was ineffective for not explaining the phrase "collateral attack" and for not collaterally attacking in state court at least one of the three prior convictions relevant to his § 924(c) conviction. Part of Johnston's waiver required him to inform the court of any dissatisfaction with his counsel's performance by no later than the sentencing hearing. Johnston's ineffective assistance of counsel claims fall within the waiver because he would have

6

known before the sentencing hearing, either when he read the plea agreement or assented to its provisions during his plea hearing, that counsel did not allegedly explain "collateral attack" or inform him that "collateral attack" included § 2255 motions. Johnston also knew before the sentencing hearing that counsel allegedly deficiently performed by not investigating his prior state convictions when he discussed the PSR with counsel before the hearing. Therefore, these ineffective assistance of counsel claims fall within the scope his knowing and voluntary waiver, and they are dismissed.

    2.    Subsequent changes in the law

Johnston's second claim is that he is entitled to be resentenced by a retroactive application of the Fair Sentencing Act of 2010. Johnston's last claim is that his sentence violates due process because he expects the United States Supreme Court to issue an opinion favorable to his position that the § 924(c) mandatory minimum must not apply when § 924(e) imposes a greater mandatory minimum. These claims are challenges to the imposed sentence, which fall within the scope of the waiver because Johnston agreed not to file any document which seeks to disturb any order entered in his criminal action. Although these claims involve changes in the law after his plea agreement, "the possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements." United States v. Oladimeji, 463 F.3d 152, 155-56 (2d Cir. 2006) (internal quotation marks omitted). See United States v. Lee, 523 F.3d 104, 107 (2d Cir. 2008) (finding that legal developments favorable to the defendant do not constitute grounds for finding an appellate waiver unenforceable merely because they occurred after the plea agreement). See also United States v. Oliver, 280 Fed. App'x 256, 257 (4th Cir. 2008) (declining to review a denial of a downward departure based on

the sentencing disparity despite a change to the law). Therefore, Johnston waived these claims that collaterally attack his sentence because they fall within the scope of his knowing and voluntary waiver, and they are dismissed.[2]

III.

For the foregoing reasons, the court grants the United States' motion to dismiss and dismisses Johnston's motion to vacate, set aside, or correct sentence.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to Johnston and counsel of record for the United States.

**ENTER:** This 25th day of May, 2011.

United States District Judge

---

[2] Even if these claims were not waived, they are meritless. Johnston fails to establish counsel's deficient performance or resulting prejudice. There was no deficient performance because the court described collateral attack and no prejudice because Johnston's fails to establish what likelihood of success counsel would have had to challenge old state-court convictions during the short duration of his federal proceedings. See Strickland v. Washington, 466 U.S. 668, 687, 692 (1984) (requiring satisfaction of both prejudice and performance prong to state a claim of ineffective assistance of counsel). The court does not have jurisdiction to retroactively apply the Fair Sentencing Act of 2010 in a closed criminal case. In Abbott v. United States, 131 S. Ct. 18, 23 (2010), the Supreme Court rejected Johnston's perspective and held "that a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction."